# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LORRAINE HOLMES,

                Plaintiff,                CASE NO. 16-10610
                                        HON. DENISE PAGE HOOD

v.

CITY OF ROMULUS, et al.,

                Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#60]

## I.      BACKGROUND

### A. Procedural Background

On May 25, 2016, Plaintiff Lorine Holmes-El ("Holmes") filed an Amended Complaint against Defendants the City of Romulus ("Romulus"), Romulus Police Officer, David Brooks ("Brooks"), and Director for Public Safety for the Romulus Police Department John Leacher ("Leacher") (collectively, "Defendants"), alleging a 42 U.S.C. § 1983 violation for Excessive Force against Defendant Brooks (Count I); 42 U.S.C. § 1983 *Monell* violations by the City Romulus and Defendant Leacher for failure to hire, supervise, train and/or discipline, and a failure to screen its officers (Count II); and state law claims for Intentional Infliction of Emotional Distress

(Count III) and Assault and Battery (Count IV) against Defendant Brooks. (Doc # 7) Holmes requests that the Court award her exemplary damages and other monetary relief. *Id.* Pursuant to a Stipulation and Order, Count IV of the Complaint was dismissed on September 29, 2016. (Doc # 25) Defendant Leacher was also dismissed from this action pursuant to a Stipulation and Order filed on September 29, 2016. (Doc # 26) The only remaining claims in this action are (1) Holmes' § 1983 Excessive Force claim against Defendant Brooks, (2) Holmes' *Monell* claim against Romulus, and (3) Holmes' Intentional Infliction of Emotional Distress claim against Defendant Brooks.

This matter is before the Court on Defendants' Motion for Summary Judgment filed on March 22, 2018. (Doc # 60) Holmes filed a Response on April, 20, 2018. (Doc # 64) Defendants filed a Reply on May 7, 2018. (Doc # 70)

For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### B. Factual Background

On February 19, 2013, around 4:30 a.m., Holmes, who was 69 years old at the time, was driving on a dark road with the high beams on her car illuminated. (Doc # 64, Pg. 2) Brooks made a traffic stop of the vehicle being driven by Holmes for failure to dim her high beams to oncoming traffic. (Doc # 60, Pg. 4) After instructing Holmes to produce her driving credentials, Brooks told Holmes she was

pulled over for driving with her high beams on.  (Doc # 64, Pg. 2)  Upon questioning, Brooks learned that Holmes did not have a valid driver's license, did not have a valid license plate, and she did not have her vehicle's registration in her possession,[1] but had a Moorish Science Temple license plate.  (Doc # 60, Pg. 4)  During the stop, Holmes began to tell Brooks to "call the sheriff" to the scene of the stop.  (Doc # 64, Pg. 3)  Brooks then identified himself as a Romulus police officer, and told Holmes he did not need to call the sheriff.  (*Id.*)  Brooks then began to demand that Holmes exit her vehicle.  (*Id.*)  Holmes initially resisted Brook's command, and Brooks radioed for backup.  (*Id.*)  The Parties have provided a video recording of the traffic stop.  (Doc # 60, Exh. D)

The video recording shows that, following some resistance, Holmes got out of her vehicle after Brooks handcuffed her left hand.  (Doc # 60, Exh. D at 5:46) Once Holmes was out of the car, Brooks asked Holmes to put her right hand behind her back.  (*Id.* at 5:47)  Holmes replied that she cannot comply with that request because of her arthritis.  (*Id.* at 5:48)  Brooks said that Holmes could, "put it in front then."  (*Id.* at 5:49)  Next, Holmes' right hand can been seen near her coat pocket. (*Id.* at 5:53)  Brooks instructed Holmes not to put her hand near her pocket (*Id.* at 5:55), and in less than one second after giving Holmes the order, shoved Holmes into her vehicle while holding both of her wrists, and then performed a takedown on

---

[1] The Court notes that Holmes does not contest the legality of the traffic stop.

Holmes. (*Id.* at 5:55–6:00) Holmes is heard screaming for help as Brooks held her on the ground, placed his body weight on Holmes, and told her to place her right hand behind her back. (*Id.* at 6:05) Holmes told Brooks several times that, due to her arthritis, she could not put her right hand behind her back. (*Id.* at 6:05–6:15) Despite Holmes' statements, Brooks proceeded to handcuff Holmes behind her back as she moaned and told Brooks she could not put her hand behind her back. (*Id.* at 6:15–7:00)

The supporting officers, one male officer and one woman officer, arrived on the scene of the stop while Brooks was in the process of handcuffing Holmes. After Holmes was handcuffed, the female officer conducted a pat-down search of Holmes and found no weapons or contraband. (Doc # 64, Pg. 11) The female officer left the scene after the pat-down search. (*Id.*) The male officer did not assist Brooks in handcuffing Holmes. (*Id.*) Later, Brooks and the male officer lifted Holmes up while her arms were behind her back. (*Id.* at 12) Holmes was escorted to the police station by the male officer. (*Id.*) While at the police station, Holmes complained that she was in pain. (*Id.*) An ambulance was called and Holmes was taken to Annapolis Hospital, where she was informed that both her right and left arms were injured from the arrest incident, and that her left arm would require immediate surgery. (*Id.*) Surgery was performed on Holmes' left shoulder, and later surgery

on her right shoulder.  (*Id.*)  Holmes' left shoulder is disfigured and the bone presently protrudes from her skin.  (Doc # 64, Exh. E)

## II.    ANALYSIS

### A. Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986).  A fact is material if it could affect the outcome of the case based on the governing substantive law.  *Id.* at 248.  A dispute about a material fact is genuine if, on review of the evidence, a reasonable jury could find in favor of the nonmoving party.  *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  The Court may grant a motion for summary judgment if the nonmoving party, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## B. Excessive Force Claim Against Defendant Brooks

### 1. *Qualified Immunity*

Defendants argue that Defendant Brooks is entitled to qualified immunity on the excessive force claim against him. Holmes argues that Brooks is not entitled to qualified immunity because a material issue of fact exists as to whether Brooks' conduct in handcuffing and arresting her was in violation of her rights under the Fourth Amendment.

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A government official will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the action at issue was lawful; but if an officer of reasonable competence could disagree on this issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is an initial threshold question the court is required to rule on early in the proceeding so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The first inquiry to determine qualified immunity is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. If a violation

could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The "clearly established" right allegedly violated by the officials cannot be considered at an abstract level, but must be approached at a level of specificity: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court.

### 2. *Excessive Force*

Defendants argue that Holmes' excessive force claims against Brooks should be dismissed because the force used by Brooks to arrest and restrain Holmes was reasonable and not excessive. (Doc # 60, Pg. 21) Holmes argues that Brooks' conduct in arresting and restraining her was unreasonable and excessive because Brooks was aware of Holmes' physical medical conditions. (Doc # 64, Pg. 13–14)

Where a plaintiff complains of excessive force in the course of an arrest, investigatory stop, or other seizure, the claim must be analyzed under the Fourth Amendment's objective reasonableness standard, not under a substantive due

process standard. *Walton v. City of Southfield*, 995 F.2d 1311, 1342 (6th Cir. 1993) (citing *Graham*, 490 U.S. at 395 (1989)).  The proper application of the objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

The Supreme Court has further explained:  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396-97.  The question for the Court is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  This test "requires a 'careful balancing' of the individual interest in being free from unreasonable seizures and the important governmental interest in protecting the safety of its peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396).

Brooks argues that he is entitled to summary judgment on the excessive force claim because he used reasonable force in light of Holmes' resistance, aggressive demeanor, and Holmes shoving her right hand in her pocket. Brooks also argues that the case law that supports Holmes' theory of excessive force only applies where an officer knows that the suspect in question is injured and also believes that the suspect posed no threat to him. (Doc # 70, Pg. 4) Holmes argues that Brooks was clearly aware that he was violating Holmes' constitutional rights under the totality of the circumstances. (Doc # 64, Pg. 16–24)

Viewing the facts in the light most favorable to Holmes, the first *Graham* factor weighs in favor of Holmes, as she was guilty of committing only misdemeanor traffic infractions when she was stopped by Brooks. The second *Graham* factor also weighs in favor of Holmes. The video of the arrest demonstrates that Brooks told Holmes to take her hand away from her pocket, and Brooks began to grab and shove Holmes before she could comply. In addition, Brooks was holding Holmes by both of her wrists and charged toward Holmes while performing a takedown. Even if Brooks might have thought Holmes possessed some weapon, he had control of both of her hands after grabbing her wrists. Brooks maintained control of Holmes as he threw her to the ground, mounted, and handcuffed her behind her back. This was after Brooks instructed Holmes that she could be handcuffed in front of her body. Despite his own concession, and Holmes' expressions of discomfort and calls for

help, Brooks proceeded to handcuff Holmes behind her back while on top of her. Brooks' conduct evidences that, despite an awareness that Holmes did not have weapon in her right hand, he completely disregarded her alleged medical condition while throwing her down and handcuffing her. The third *Graham* factor also weights in favor of Holmes because she began to comply after initially resisting Brooks' request. The struggle that ensued between Brooks and Holmes was the result of her resistance to being handcuffed. The video, however, shows that Holmes had begun complying with Brooks' orders when he threw her to the ground.

The Court concludes that there remain genuine issues of material fact that preclude summary judgment in favor of Brooks. Taken in the light most favorable to Holmes, a reasonable juror could conclude that Brooks violated Holmes' constitutional right when he threw her down and handcuffed her behind her back. Defendants concede that Sixth Circuit precedent establishes an excessive force claim for handcuffing where an officer knew that the suspect had an injured arm and believed the suspect posed no threat to him. *See Walton v. City of Southfield*, 955 F.2d 1331 (6th Cir. 1993); *see also Crooks v. Hamilton Cnty., Ohio*, 458 F. App'x 548, 550 (6th Cir. 2012). Defendants' Motion for Summary Judgment on the excessive force claim is **DENIED**.

## C. *Monell* **Claim**

Defendants argue that summary judgment should be granted on Holmes' *Monell* claim because she is unable to show that her constitutional rights were violated, that the alleged violation was a result of the execution of a particular policy or custom, or that the City of Romulus has ignored prior unconstitutional conduct by its officers. Holmes does not contest Defendants' arguments.

"To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's constitutional rights." *Brown v. Battle Creek Police Department*, 844 F.3d 556, 573 (6th Cir. 2016) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)).

"A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability." *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citations omitted). "The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Slusher v. Carson,* 540 F.3d 449, 457 (6th Cir. 2008) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)). A plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly

on notice that the training in this particular area was deficient and likely to cause injury." *Brown*, 844 F.3d at 573 (citing *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir. 2005)).

A city's failure to investigate claims against its police officers or discipline its officers for illegal acts may give rise to § 1983 liability. *Hullett v. Smiedendorf*, 52 F. Supp. 2d 817, 825 (W.D. Mich. 1999) (citing *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1247 (6th Cir.1989); *Marchese v. Lucas,* 758 F.2d 181, 188 (6th Cir.1985)). "The theory underlying these cases is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct." *Dyer v. Casey,* 72 F.3d 129, 1995 WL 712765, at *2 (6th Cir.1995). A plaintiff has the burden of showing "a history of widespread abuse that has been ignored by the city." *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994).

Holmes does not contest Defendants arguments regarding her *Monell* claim against Romulus. Defendants' Motion for Summary Judgment regarding the *Monell* claim should be **GRANTED**.

### D. Intentional Infliction of Emotional Distress

#### 1. *Governmental Immunity*

Defendants argue that Brooks should be granted summary judgment on the intentional infliction of emotional distress claim because Michigan law grants police officers governmental immunity when performing discretionary acts in good faith,

within the scope of their employment. Holmes argues that Brooks' use of force in this case was intended to cause harm, taken with reckless disregard that his conduct would cause Holmes severe emotional distress, and rooted in an abuse of power or authority. (Doc # 64, Pg. 24)

Under Michigan law, governmental employees are granted immunity from liability for intentional torts where (1) an employee's acts were taken during the course of employment and the employee was acting, or reasonably believed he was acting, within the scope of his authority; (2) the acts were taken in good faith and without malice; (3) the acts where discretionary/decisional and not ministerial/operational. *Odom v. Wayne County*, 482 Mich. 459, 468 (2009) (citing *Ross v. Consumers Power Co.*, 420 Mich. 567, 633-34 (1984)). Intentional Infliction of Emotional Distress is an intentional tort under Michigan law, so the *Odom* test should be applied.

Defendants argue that elements one and three of the *Odom* test are clearly met, and the good faith element is met because Brooks honestly believed that his conduct was appropriate and that he was acting in good faith in response to Holmes' noncompliance, resistance, and placing her hand in her pocket contrary to his instructions. (Doc # 60, Pg. 36) Holmes does not contest whether elements one and three of the *Odom* test are met, but argues that the facts clearly demonstrate that

Brooks' actions in handcuffing Holmes were taken with malicious intent. (Doc # 64, Pg. 25).

"The good-faith element of the *Ross* test is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Odom v. Wayne Cty.*, 482 Mich. 459, 481–82 (2008). "There is no immunity when the governmental employee acts maliciously or with a wanton or reckless disregard of the rights of another." *Id.* at 474.

Defendants argue that Brooks' actions were taken in good faith because, even if he was mistaken, he believed that Holmes possessed a weapon when her hands were near her pocket. Holmes contends that she was merely dropping her keys in her pocket before being handcuffed. (Doc # 64, Pg. 5) Based on the video footage, Defendants' argument is unpersuasive. The video shows that Brooks told Holmes to take her hand away from her pocket, began to grab and shove Holmes before she could comply, and while holding Holmes by both of her wrists before performing a takedown. As stated in the analysis above, Brooks' conduct evidences that, despite an awareness that Holmes did not have a weapon in her right hand, he completely disregarded her alleged medical condition while throwing her down and handcuffing her. Brooks cannot meet the good faith element of the *Ross* test. Government immunity does not apply in this case.

In addition, Defendants argue that Holmes Intentional Infliction of Emotional Distress claim against Brooks must fail because she cannot establish a *prima facie* case under Michigan law.  (Doc # 60, Pg. 37)  Holmes contends that Brooks' acts or omissions were a classic example of "extreme" and "outrageous" conduct that would cause any person to suffer physical sickness or emotional distress.  (Doc # 64, Pg. 25)  Under Michigan law, a claim for intentional infliction of emotional distress requires (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.  *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905, 908 (1985).  Defendants argue, in part, that Holmes has not provided any evidence that she suffered severe emotional distress. Holmes contends that Brooks' conduct would cause any human being to suffer physical illness and emotional distress, but she has not provided any facts to support that statement.  "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment."  *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).  Based on the facts presented, Holmes has not produced sufficient facts to establish a *prima facie* case for intentional infliction of emotional distress.  Defendants' Motion for Summary Judgment regarding Holmes' Intentional Infliction of Emotional Distress claim is **GRANTED**.

## III.   CONCLUSION

For reasons stated above,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc # 60) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Holmes' *Monell* claim against the City of Romulus is **DISMISSED**.

**IT IS FURTHER ORDERED** that Holmes' Intentional Infliction of Emotional Distress claim against Brooks is **DISMISSED**.

**IT IS FURTHER ORDERED** that the City of Romulus is **DISMISSED** from this action.

All other claims remain.


<u>S/Denise Page Hood</u>
Denise Page Hood
Chief Judge, United States District Court

Dated:  August 20, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 20, 2018, by electronic and/or ordinary mail.

<u>S/LaShawn R. Saulsberry</u>
Case Manager